UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| **NOEMI IRIZARRY O/B/O A.A.,** | ) | **CASE NO.  1:12CV03081** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | **OPINION AND ORDER** |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

     This matter comes before the Court upon Plaintiff's Objection to the Report and

Recommendation of the Magistrate Judge, recommending that the Court affirm the Defendant's

final decision.  For the following reasons, the Court adopts in part and rejects in part, the Report

and Recommendation of the Magistrate Judge, and the Court remands the case to the

Commissioner for further proceedings consistent with this opinion.

### I. FACTUAL BACKGROUND

     Neither Plaintiff nor Defendant contest the facts in the Magistrate Judge's Report and

Recommendation.  All facts from the Report and Recommendation are incorporated herein.

1

*Procedural Background:*

On April 21, 2010, Plaintiff filed an application for SSI benefits on behalf of minor A.A., claiming A.A. was disabled due to hearing, behavioral and sleep problems.  (Tr. 40).  The Commissioner rejected the claim the first time and again on reconsideration.  (Tr. 37, 46).  An administrative law judge ("ALJ") held a hearing and determined that A.A. was not disabled.  (Tr. 12-25).  The Appeals Council denied Plaintiff's request for a review, making the ALJ's decision final.  (Tr. 4); 20 C.F.R. § 416.1455, 416.1481.  Plaintiff filed the instant case on October 26, 2012.  (Doc. 1).

*Factual Background:*

General

On April 21, 2010, Plaintiff completed a Function Report indicating A.A. wore glasses, had not been fitted for hearing aids and had no problem communicating.  (Tr. 79, 81).  Plaintiff also indicated A.A. had no limitation in his abilities to progress in learning, help himself, cooperate with others, or take care of himself.  (Tr. 82-83, 85).  She did say, however, that A.A. had problems behaving, paying attention and sticking with a task.  (Tr. 84, 86).

Plaintiff completed a questionnaire on June 13, 2010, where she indicated A.A. did not get along with friends or playmates, fought with his brothers and had trouble focusing and finishing chores.  (Tr. 93).  In addition, Plaintiff indicated that A.A. received hearing aide support, had an Individualized Education Plan ("IEP") at school, took fluoxetine for depression, complained and behaved poorly at school.  (Tr. 93-95).

On May 18, 2010, Nicole Ralston, Ed.S., NCSP, administered the Universal Nonverbal Intelligence Test ("UNIT") to A.A., which showed he possessed average skills in reasoning,

2

memory, nonverbal problem solving and symbolic quotients, as well as low-average skills in non-symbolic quotients.  (Tr. 169).  In addition, A.A. took a Woodcock-Johnson Test of Achievement-III ("WJ-III"), revealing that he had average reading skills, very low math skills and low-average writing skills.  (Tr. 171-72).  Around this same time, A.A.'s teacher, Criss Rhianna, indicated that A.A. had trouble following instructions, but was "generally a well behaved student and interact[ed] well with his peers and teachers."  (Tr. 184).

Schooling and Counseling

In the third quarter of the 2009-2010 school year, A.A., who was a sixth grader, earned almost all D's and F's.  (Tr. 179).  His language arts teacher reported that A.A. had an F in her class because he did not turn in a large project, had trouble brainstorming, wrote run-on sentences and used incorrect/inconsistent verbs.  (Tr. 175-76).  A.A.'s math teacher indicated that although A.A. had an F in math, "he did not give up" on the subject.  (Tr. 177).  However, his math teacher indicated that A.A. could not do problems on his own, lacked knowledge of even basic math facts and could not achieve higher than a D because of his low comprehension. (Tr. 177-78).

A.A. was placed in an IEP at school effective his seventh grade year.  (Tr. 207-19).  In addition, he received evaluations regarding concerns that he had impaired hearing.  (Tr. 208). The IEP indicated that A.A. scored in the basic or limited range on the Ohio Achievement Assessments, possessed normal fine motor skills and gross motor skills, was well-behaved, interacted well with others and did well when seated close to the teacher.  (Tr. 208).  Further, A.A. developed goals to improve his performance in reading, writing, math, and communication and received instructions in English and math classes to help him meet these goals.  (Tr. 210-14,

3

216).  To accommodate his difficulties and help him achieve his goals, the IEP program provided A.A. with preferential seating in classrooms, small group settings, extra time for assignments, oral directions, repeated and slower paced instructions and speech therapy for 90 minutes per month.  (Tr. 214, 217).

A.A. also received individual and group counseling at the Nord Center from July 2009 through September 2011 and received consultations from several therapists, including C. Jackosky, M.D.  (Tr. 127-49, 207-59, 273-301, 336-356).  Plaintiff, A.A., and the therapists frequently discussed A.A.'s obesity and the family's struggle to stick to a diet and exercise regimen.  (Tr. 129, 133, 238, 240, 244, 275, 337, 339).  A.A. stated that he wanted to lose weight, but he disliked exercising.  (Tr. 128).  In addition, Plaintiff stated that A.A. may have diabetes, but A.A. never received such a diagnosis.  (Tr. 128-29, 133).

Therapy revealed other areas where A.A. was struggling.  A.A. and Plaintiff both stated that A.A. did not do well in school, but they attributed this to his failure to turn in work, his confusion from changing classes and his inability to ask for help from the teacher.  (Tr. 130-31, 135, 137, 236, 238, 275, 287, 291, 297, 299, 338).  Also, Plaintiff stated that A.A. behaved poorly at home and had difficulty getting along with his brothers.  (Tr. 130, 137, 140, 146-49, 236, 238, 248, 250, 253, 273, 275, 277, 285, 296, 338).

In a therapy session on April 14, 2011, the therapist noted that A.A. did not take his medication and was difficult to redirect, hyperactive, and impulsive; a week later, the therapist reported that A.A. took his medication and was less hyperactive and impulsive.  (Tr. 281, 283).  In addition, the therapist noted that A.A.'s anger, behavior and mood would improve.  (Tr. 140, 143, 246, 250, 275, 285, 291, 295).

4

Dr. Jackosky completed an initial psychiatric evaluation at the Nord Center on September 2, 2011.  (Tr. 337).  In the evaluation, she reported that A.A. complained of depression, poor behavior, his dad's death, decreased interest and enjoyment, bullying, low energy and trouble sleeping.  (Tr. 337).  In addition, she reported A.A.'s history of sleep apnea, obesity, high cholesterol and hypertension, but ruled out a diabetes diagnosis.  (Tr. 337).  She reported normal findings in the areas of thought content, perception, thought process, mood, affect, behavior and intelligence.  (Tr. 338-39).  She did not diagnose ADHD, but did diagnose depressive disorder, as well as assigned A.A. a global assessment of functioning ("GAF") score of $50^2$, followed by a prescription of fluoxetine.  (Tr. 339-40).

Further Health Evaluations

 A.A. began to see physicians regarding concerns of hypertension, obesity, blood pressure, sugar levels, ADHD, sleep apnea and atopic dermatitis.  (Tr. 303-09).  In an obesity evaluation, Beth Kaminski, M.D. reported that A.A. had poor eating habits, problems with portion control, got "virtually no exercise" and watched television multiple hours per day.  (Tr. 153).  In addition, Dr. Kaminski further reported that A.A. had a good energy level, slept well, did not snore, had frequent colds, wore glasses and had no problems with hearing or dentition.  (Tr. 153).

Also, other specialists evaluated A.A.'s hearing and health.  On February 18, 2010, Lorain Schools audiologist, Mary K. Westbrook, MA, CCC-A, conducted a hearing evaluation, diagnosing A.A. with bilateral peripheral hearing loss of slight to severe degree in his right ear and mild to severe degree in his left ear.  (Tr. 159, 166).  Further medical exams and procedures produced mixed results regarding A.A.'s obesity, sleep apnea, hypertension and hearing

5

problems.  (Tr. 358-60).

On September 3, 2010, Thomas F. Zeck, Ph.D., examined A.A. on behalf of the Social Security Administration ("SSA").  (Tr. 261-64).  He noted A.A.'s history of depression, anger management issues, ADHD, hearing impairment and participation in IEP.  (Tr. 261).  A.A. also had a history of high blood pressure, possible diabetic condition and sleep apnea.  (Tr. 262).  A.A. did not participate in any organized sporting activities, but liked to play pickup games in the neighborhood, rode a bike and played basketball and hide and seek.  (Tr. 263).  He would also talk back at home and was not very helpful around the house.  (Tr. 263).  Further, A.A. engaged easily, but was listless and lethargic.  (Tr. 263).  Dr. Zeck diagnosed A.A. with ADHD and hearing impairment, as well as assigned him a GAF of 62[3].  (Tr. 263-64).

Under a State agency review, Robelyn Marlow, Ph.D. and John L. Mormol, M.D. reviewed A.A.'s application at the initial disability determination level.  (Tr. 45).  They determined A.A. had a marked limitation in health and physical well-being due to hearing loss. (Tr. 45).  However, they noted that A.A. was able to hear conversations, interacted with the examiner appropriately, had good word recognition in both ears and wore hearing aids.  (Tr. 45). Drs. Marlow and Mormol found less than marked limitations in the domains of attending and completing tasks and interacting and relating with others, but no limitations in the other domains. (Tr. 44).  On reconsideration, Teresita Cruz, M.D., and Caroline Lewin, Ph.D., made analogous findings.  (Tr. 35-36).

<u>Administrative Hearing and Testimonies</u>

On September 22, 2011, A.A. testified to the ALJ regarding his claimed disabilities.  (Tr. 375).  A.A. testified that he was not doing well in classes and was frequently off task, but he

enjoyed math and social studies.  (Tr. 376-77, 384).  He also testified that he often forgot to take his medication, including the day of the hearing; when he did not take his medicine, he would fight with his brothers and admitted that taking the medicine helped prevent this.  (Tr. 378-80). In addition, A.A. stated he usually finished his homework at school, enjoyed reading mystery books, played with his brothers, practiced math online, played with his dogs, played kickball and football, played at the park, went to church and watched television.  (Tr. 381-83, 386-89).  He further stated he did not have trouble getting along with others and did not get into trouble at school.  (Tr. 391-92).

Plaintiff's testimony generally agreed with A.A.'s.  (Tr. 392).  Plaintiff testified that she would prepare A.A.'s pills for the week, but that he would often forget to take them.  (Tr. 393). She said A.A. was on a diet at home and ate lunch at school, and she could not keep A.A. in a weight/diet program because travel was difficult.  (Tr. 393-94).  Plaintiff further stated that A.A. was doing well in school this year and that his medication reduced his symptoms.  (Tr. 395-96).

On November 3, 2011, the ALJ determined A.A.'s only severe impairment was "behavioral problems."  (Tr. 15).  He determined that A.A. did not have an impairment or combination of impairments that met or equaled a listing of impairments, specifically Listing 102.10 (regarding hearing loss) and Listing 112.11 (regarding ADHD).  (Tr. 16).  To determine functional equivalence, the ALJ analyzed the record and found A.A. had less than marked limitations in all domains.  (Tr. 20-25).  The ALJ found A.A. was not disabled.  (Tr. 25).

## II. STANDARD OF REVIEW

7

## A.  Civil Rule 72(b) Standard

Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(C), a District Court reviews a specific objection to a Magistrate Judge's Report and Recommendation *de novo*.  The District Court only must review any specific objections and the Magistrate Judge's correlative facts or legal conclusions.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Local Rule 72.3(b) provides that the District Judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge."

## B.  The Standard Regarding the ALJ's Findings

The Court will uphold the ALJ's decision if it is supported by substantial evidence in the record and if the ALJ applied the correct legal standards.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion."  *Kyle v. Comm'r of Soc. Sec.*, – F.3d –, No. 09-3628, 2010 WL 2583375 at \*6 (6th Cir. June 28, 2010).  If there is substantial evidence in the record to support the opposite conclusion of the ALJ, the ALJ's decision is still not subject to reversal as long as substantial evidence also supports his conclusion.  *Id*.

## C.  Standard for Childhood Disability

A child's disability claim undergoes a three step review process.  20 C.F.R. § 416.924(a). These steps ask whether: (1) the child is engaged in substantial gainful activity; (2) there is a severe impairment or combination of impairments; and (3) the severe impairment, or combination of impairments, medically or functionally equals a listing of impairments.  20 C.F.R. §§ 416.924(a)-(d).  For the third step, "if a child's impairment – or combination of impairments – does not meet or is not medically equivalent in severity to a listed impairment,

8

then the [ALJ] will assess all functional limitations caused by the impairment to determine if the child's impairments are functionally equivalent in severity to any of the listed impairments of Appendix 1". *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 126 (6th Cir. 2003).

The ALJ uses six domains to measure functional equivalency: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §§ 416.926a(b)(1)(i-vi). Plaintiff must demonstrate marked limitations in two domains or an extreme limitation in one to find a child disabled. §§ 416.926a(a) & (d).

### III. PLAINTIFF'S OBJECTIONS

Plaintiff raises five objections to the Report and Recommendation of the Magistrate Judge. Each is reviewed *de novo* pursuant to Fed. R. Civ. P. 72(b).

### A. Objection: the ALJ failed to assign weight to the treating psychiatrists' opinions; this failure does not fall under a harmless error exception.

Plaintiff's first objection to the Magistrate Judge's Report and Recommendation is that the Magistrate Judge erred by recommending that the ALJ's failure to designate the weight he gave to the treating psychiatrists, Drs. Jackosky and Messerly, was harmless error. (Objections at 2). For reasons *infra*, the Court finds that the ALJ's failure to accord weight to the treating psychiatrists' opinions was not harmless error.

Under the SSA's regulations, an ALJ "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2). If an ALJ fails to provide what weight he gave to a treating source, remand is proper. *Bowen v. Commissioner*, 478 F.3d 742, 750 (6th Cir. 2007). However, even if an ALJ fails to provide this weight, a court can find harmless error and affirm the decision if the ALJ

nonetheless "indirectly attacked" a treating source's opinion. *Nelson v. Comm'r of Soc. Sec.*, 195 F.App'x 462, 471 (6th Cir. 2006).

The purpose of requiring an ALJ to explain his treatment of a treating source's opinion is "to see if [the ALJ's decision] implicitly provides sufficient reasons for the rejection" as a procedural safeguard. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005). Requiring an ALJ to provide reasons for the rejection "helps explain the outcome of an adverse ALJ decision to a claimant. . . It further assists. . . the federal courts in conducting meaningful review." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

The Sixth Circuit Court of Appeals has held that if an ALJ's evaluation "indirectly attacks" a treating physician's opinion, and its consistency, with the rest of the record evidence, then harmless error applies and remand is not warranted. *Nelson*, 195 F. App'x at 470. However, *Bowen* later limited the "indirectly attacks" exception, stating that extending the exception "where the ALJ entirely failed to address the primary treating source's presumptively supportable opinion- plainly risks having the exception swallow up the rule." *Bowen*, 478 F.3d at 750.

In *Bowen*, "[n]owhere in the ALJ's 12-page opinion" did the ALJ name the treating physician or the length of time she treated the claimant. *Bowen*, 478 F.3d at 747. The ALJ only noted the treating physician's name "in a long listing of medical records appended to the ALJ's decision." *Id*. In the present case, the ALJ merely twice referenced Dr. Jackosky's opinion and only by referencing the exhibit number that contained the opinion. (Tr. 20, 24). Like *Bowen*, this is insufficient as an indirect attack on Dr. Jackosky's findings and harmless error does not apply.

10

Similarly, harmless error is not justified merely because the ALJ mentioned evidence contrary to A.A.'s treating psychiatrists' medical opinions.  Although Defendant cites *Nelson* for the proposition that when an ALJ references a treating physician's opinion in the context of discussing contrary medical evidence, this is enough to constitute an indirect attack on that treating physician, that does not hold here.  *Nelson*, 195 F. App'x at 472.  The present case is distinguishable because apart from citing exhibits, the ALJ never referenced Drs. Jackosky's or Messerly's names, nor their opinions while discussing contrary medical evidence.  Therefore, the Court remands the case to clarify what weight the ALJ gave the treating psychiatrists' opinions.

## B.  Objection: the ALJ's decision failed to mention key findings by Dr. Zeck, and failed to evaluate and weigh Dr. Zeck's opinions.

Plaintiff objects to the Report and Recommendation's "combing of the record for evidence inconsistent with Dr. Zeck's report, instead of following the agency's rules requiring an adequate explanation by the ALJ."  (Objections at 3).  Dr. Zeck is a non-treating physician, so his opinion is not entitled to controlling weight.  Nevertheless, the Court weighs Dr. Zeck's opinion under the same factors as treating physicians, "including supportability, consistency, and specialization."  *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp. 2d 813, 823-24 (S.D. Ohio 2011).

Plaintiff's objection is misplaced.  The ALJ afforded Dr. Zeck's opinion "some weight," agreeing that A.A.'s impairments were severe, but were not medically or functionally equal to any listed disabilities.  (Tr. 17).

The ALJ sufficiently evaluated Dr. Zeck's findings, attacking the supportability and consistency of the opinion.  (Tr. 15).  To begin, the ALJ found that Dr. Zeck's hearing loss diagnosis was inconsistent with the record evidence demonstrating that A.A.'s hearing loss was treated with amplification.  (Tr. 15).  Further, the ALJ recognized that Dr. Zeck's report did not

11

support his ADHD diagnosis of A.A. and the record supports the ALJ's finding that ADHD did not severely impair A.A.  (Tr. 15).  In addition, A.A. acknowledged that medications kept him on task in school and that low grades were the result of not turning in work.  (Tr. 130-31, 135, 137, 236, 238, 275, 291, 297, 338, 380, 396).

The ALJ sufficiently accorded weight to Dr. Zeck's opinion and evaluated it properly. Therefore, the Court overrules Plaintiff's objection.

### C.  Objection: the ALJ's decision failed to explain why it overruled the State-agency doctor's finding that claimant had a marked limitation in the domain of physical health.

Plaintiff objects to the Report and Recommendation's finding that the ALJ properly explained his reasons for overruling the State-agency doctor's opinion regarding A.A.'s "marked" limitation in the domain of physical health.  (Objections at 4).  Dr. Cruz is a non-treating source and the Court weighs her opinion under the same factors as a treating physician's opinion, including "supportability, consistency and specialization."  *Douglas*, 832 F.Supp. 2d at 823-24.

Plaintiff's objection is misplaced, since the ALJ provided many reasons for overruling the findings.  First, the ALJ cited record evidence demonstrating that A.A. participated in basketball, kickball and football.  (Tr. 16).  Further, the ALJ pointed to record evidence showing that A.A. had good energy level and had a blood pressure that was in the upper limit of normal. (Tr. 15).  Lastly, regarding A.A.'s hearing loss, the record indicated he wore hearing aids and was able to communicate with no significant difficulty.  (Tr. 15).  Therefore, the ALJ sufficiently disputed the consistency of Dr. Cruz's opinion with record evidence, and the Court overrules Plaintiff's objection.

### D.  Objection: the ALJ decision did not provide adequate, conclusory reasons for

**finding the ADHD Listing did not apply.**

Plaintiff objects to the Report and Recommendation's finding that the ALJ had substantial evidence to reinforce his determination that A.A. did not meet Listing 112.11. (Objections at 4).  Rather, Plaintiff maintains that the ALJ must provide an adequate explanation for this finding.  (Objections at 4).

A child is considered disabled for benefits purposes if the claimant meets the requirements of a listed impairment.  20 C.F.R. § 416.926a.  If not, then as a third step in the disability determination, the ALJ determines if a claimant's impairment, or combination of impairments, meets or medically equals a listed impairment.  *Reynolds v. Comm'r of Soc. Sec.*, 424 F.App'x 411, 414 (6th Cir. 2011).  For an impairment to equal a listed impairment, it must "at least equal in severity and duration. . . any listed impairment."  *Id.*  An ALJ must use medical evidence to make this determination.  *Id.*; *May v. Astrue*, 2011 WL 3490186, at *7 (N.D. Ohio 2011).

To determine if an ALJ properly found that a claimant's impairment does not equal an appropriate listing, a court considers whether substantial evidence supports the ALJ's findings. *Snoke v. Astrue*, 2012 WL 568986, at *6 (S.D. Ohio 2012).  To enable a court to make this determination, the ALJ must have provided sufficient analysis to allow for meaningful judicial review.  *Id.*  A court may look at the ALJ's decision in its entirety to determine if the ALJ provided sufficient analysis regarding the listings.  *Id.*

For a child to meet a Listing 112.11 for ADHD, a plaintiff must present medically documented findings of: (1) marked inattention; (2) marked impulsiveness; and (3) marked hyperactivity.  *Davis v. Comm'r Soc. Sec.*, 2012 U.S. Dist. LEXIS 174787, at *29 (N.D. Ohio

2012); 20 C.F.R. Pt. 404, Subpt. P., App. 1, LISTING 112.11(A).  Next, a plaintiff must show

that at the time of applying for benefits and at the time of the ALJ's decision, the child exhibited

at least two of the following criteria:

> (a) Marked impairment in age-appropriate cognitive/communicative function,
> documented by medical findings (including consideration of historical and other
> information from parents or other individuals who have knowledge of the child,
> when such information is needed and available) and including, if necessary, the
> results of appropriate standardized psychological tests, or for children under age
> six, by appropriate tests of language and communication; or

> (b) Marked impairment in age-appropriate social functioning, documented by
> history and medical findings (including consideration of information from parents
> or other individuals who have knowledge of the child, when such information is
> needed and available) and including, if necessary, the results of appropriate
> standardized tests; or

> (c) Marked impairment in age-appropriate personal functioning, documented by
> history and medical findings (including consideration of information from parents
> or other individuals who have knowledge of the child, when such information is
> needed and available) and including, if necessary, appropriate standardized tests;
> or

> (d) Marked difficulties in maintaining concentration, persistence, or pace.

*Davis*, 2012 U.S. Dist. LEXIS 174787, at *30-31; Pt. 404, Subpt. P, App. 1, LISTING

112.2(B)(2).  Plaintiff failed to point to evidence in the record to support her contention that

A.A.'s impairments meet or medically equal Listing 112.11.

In addition to Plaintiff's failure to produce relevant evidence to satisfy step three, the

ALJ's decision provided a sufficient analysis to support his finding that Listing 112.11 did not

apply.  To begin, the ALJ found that State Agency medical consultants had reviewed A.A.'s file

and "concluded that [A.A.'s] impairment or combination of impairments is severe but does not

meet or medically equal any of the listings."  (Tr. 16).  Further, the ALJ found that A.A. had less

than marked limitations regarding attending and completing tasks.  (Tr. 17).  In addition, the ALJ

14

cited the record where A.A. testified that he gets off task, but his medications help keep him on task. (Tr. 17, *supported by*, Tr. 378-79).  Lastly, the ALJ also considered the fact that A.A.'s counselor noted that he "was difficult to redirect, hyperactive, and impulsive without medication," but these symptoms did not appear as much when he took his medication. (Tr. 20, *supported by*, Tr. 281, 283).  Based on this, the ALJ provided adequate and conclusory reasons to support his finding that A.A.'s impairments were not medically equal to Listing 112.11.  The Court overrules Plaintiff's objection.

### E.  Objection: the ALJ's decision failed to mention the standardized tests that resulted in more than two standard deviations from the norm.

Lastly, Plaintiff challenges the Report and Recommendation on the basis that the ALJ failed to mention the relevant deviated standardized tests. (Objections at 4).  Because the ALJ is only required to "consider" these standardized tests, the Court overrules Plaintiff's objection.

20 C.F.R. § 416.926a(e)(ii) (2013) provides that when a child undergoes standardized testing for social security purposes, the ALJ "*will consider* [those tests] with the information we have about your functioning to determine whether you have a 'marked'. . . limitation in a domain." 20 C.F.R. § 416.926a(g) (emphasis added).  An ALJ considers these tests to determine if a claimant has a marked limitation, which occurs when the child has a certain degree of difficulty in his or her ability to learn and use information.  However, merely because a claimant's test score satisfies the requisite level for "marked" limitations does not always require that an ALJ find a marked limitation. § 416.926a(e)(4)(ii)(B).  Rather, the ALJ compares it to record evidence and resolves any discrepancies between the two. § 416.926a(e)(4)(iii).

Although the ALJ did not directly address these test scores, there was substantial evidence to support his decision to not afford them much weight. § 416.926a(e)(ii) (2013) only

requires that the ALJ consider the test scores, not overtly evaluate them.  In addition, the ALJ appropriately found that A.A. did not have marked limitations in light of the standardized test scores after considering that: (1) no state examiner found A.A. had any limitation in acquiring or using information; (2) A.A.'s scale IQ was 96; (3) A.A. scored in the average range on the WJ-III (except for math); and (4) A.A. scored near grade level on the Success For All Reading Level scale.  (Tr. 171-175, 184).  Therefore, the Court overrules Plaintiff's objection.

## IV. CONCLUSION

In conclusion, the Court rejects the Magistrate Judge's Report and Recommendation in part and remands this case to the Commissioner to clarify the weight assigned to the treating psychiatrists' opinions.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  January 17, 2014